**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION AT COVINGTON**
**Electronically Filed**

**HON. GARRY L. EDMONDSON,**
**IN HIS INDIVIDUAL CAPACITY AS**
**KENTON COUNTY ATTORNEY**
**303 Court Street**
**Covington, Kentucky 41011**

Case No.: 2:11-CV- _____

                **Plaintiff,**

V.

_____

Civil Action
18 USC § 1961 et seq. (RICO)

**AZ PETITION PARTNERS, L.L.C.**
**425 S Mill Avenue #204**
**Tempe, Arizona  85281**

      And

**ANDREW D. CHAVEZ**
**425 S Mill Avenue #204**
**Tempe Arizona 85281**

      And

**UNKNOWN DEFENDANTS**
**INDEPENDENT CONTRACTORS**
**HIRED BY AZ PETITION PARTNERS, L.L.C.**

           **Defendants.**

_____/

Christopher S. Nordloh (KY 85716)
NORDLOH LAW OFFICE, PLLC
Attorney for Plaintiff
28 West 5th Street
Covington, Kentucky 41011
*P* 859-491-9991
*F* 859-491-0187
*E* chrisnordloh@nordlohlaw.com

**CIVIL RICO COMPLAINT WITH JURY DEMAND**

**JURISDICTION AND VENUE**

1.     Federal question jurisdiction is conferred by Plaintiff's claims under the Federal Racketeer Influence and Corrupt Organizations Act, 18 USC § 1961 et seq. (RICO).

2.     Venue is proper in this Court because Plaintiff 's county attorney office is in the Eastern District of Kentucky, Northern Division at Covington, and Defendants transact business in this district in Kenton County, Kentucky. 18 USC § 1965 (a).

**PARTIES**

3.     Plaintiff Garry L. Edmondson is Kenton County Attorney in the Eastern District of Kentucky, Northern Division at Covington.

4.     AZ Petition Partners, L.L.C. is a limited liability company organized by Articles of Organization on December 19, 2000 in Maricopa County, Arizona.

5.     AZ Petition Partners, L.L.C. managing member is Andrew D. Chavez.

6.     Andrew D. Chavez became the managing member of AZ Petition Partners, L.L.C. on December 19, 2000.

7.     AZ Petition Partners, L.L.C. is engaged in the business of providing manpower resources for political activities such as opposition signature monitoring, signature processing and verification, door-to-door marketing, canvassing, election-day exit polling, campaign sign creation and installation, and gathering signatures in support of referendums and petitions in local and state elections.

8.      AZ petition Partners, L.L.C. operates across the United States in furtherance of its business activities and uses more than four thousand (4,000) independent contractors for its business activity of soliciting signatures for petitions.

9.      AZ Petition Partners, L.L.C. was hired in or around July 2011 by proponents of a referendum to dissolve the Northern Kentucky Area Planning Commission.  The proponents requested assistance with soliciting voters for signatures on a petition (the "NKAPC Petition").

10.     Unknown Defendants are independent contractors paid by AZ Petition Partners, L.L.C. to gather signatures for the NKAPC Petition.

## ALLEGATIONS COMMON TO EACH COUNT OF CIVIL RICO

11.     Pursuant to KRS 147.620(4), an area planning commission may be dissolved by referendum upon the submission of a petition to the county clerk signed by at least twenty-five percent (25%) of the number of registered voters who voted in the last presidential election.

12.     The NKAPC Petition is authorized by the Commonwealth of Kentucky and the proper form of the petition document that is required to be submitted to the county clerk is controlled by statute.  Kentucky Revised Statute ("KRS") § 147.620 et seq.

13.     The NKAPC Petition that was submitted to the Kenton County Clerk, Gabrielle Summe, on August 8, 2011, contained the purported signatures of twenty-four thousand, two-hundred ninety nine (24,299) voters, their first and last name, and included a column for the person's residential address.

14.     AZ Petition Partners, L.L.C., was responsible for producing nineteen thousand, seven hundred forty five (19,745) of the signatures contained in the NKAPC Petition.

15.　　The Kenton County Clerk is responsible for receiving petition documents, verifying that the petition documents are in proper order and, if so, certifying the petition to the Fiscal Court.

16.　　The Kenton County Fiscal Court will place properly certified petition issues on the ballot.

17.　　On August 8, 2011, proponents of the NKAPC Petition, along with Andrew D. Chavez personally, filed the NKAPC Petition with the Kenton County Clerk's Office.

18.　　The NKAPC Petition was received by the Kenton County Clerk who, along with her staff, reviewed the documents for the purpose of identifying individuals to verify their registered voter status.

19.　　The County Clerk determined that the NKAPC Petition contained four thousand, two hundred ninety two (4,292) names of individuals that could not be identified as registered voters.

20.　　The County Clerk has verified that the NKAPC Petition contains forged signatures of individuals, some of whom maintain a professional office address in Kenton County, but who reside elsewhere.

21.　　The NKAPC Petition also contains forged signatures of registered voters who reside in Kenton County.

22.　　A page from the NKAPC Petition is attached hereto as Exhibit A to the Complaint.

23.　　Exhibit A, a single page from the NKAPC Petition that is comprised of thousands of pages, contains three (3) forged signatures at lines 10, 11 and 12.

24.     Doctor Thon's and Doctor Jackson's respective signatures on lines 10 and 11 were forged, and the address provided for each doctor is a medical office address rather than a residential address.

25.     Unknown Defendant Independent Contractors who were hired to obtain signatures for the NKAPC Petition forged the signatures of Doctor Thon and Doctor Jackson and unwittingly listed for each doctor a corresponding business address contained in the *Kenton County Neighborhood Directory*, rather than a correct residential address.

26.     The *Kenton County Neighborhood Directory* published in 2010 and covering the relevant period September 2010 to September 2011 lists Doctor Jackson and his medical office address, except for the zip code, in the Residential Listing section of the Directory, at page 101.

27.     Unknown Defendant Independent Contractor copied Doctor Jackson's name from the Residential Listing section in the Directory, listed the address exactly as it appears in the Directory, and forged Doctor Jackson's signature.  See Affidavit of Dr. Jackson, Exhibit B.

28.     Similarly, Doctor Chris Thon resides in Anderson Township, Ohio, and his name is listed in the same Directory as a resident of Covington Kentucky, where TriState Centers for Sight, Inc. maintains a professional office address.

29.     The *Kenton County Neighborhood Directory* published in 2010 and covering the period September 2010 to September 2011, lists Dr. Thon's name and address, as "802 Scott Covngtn," in the Residential Listing section of the Directory, at page 203.

30.     Unknown Independent Contractor copied Doctor Thon's name from the Residential Listing section in the Directory, listed an address as it appears in the Directory, and forged Dr. Thon's signature.  See Affidavit of Dr. Thon, Exhibit C.

31.     Similarly, the signature of Lori Schlarman, who is a United States Bankruptcy Trustee in the Eastern District of Kentucky, Northern Division, was forged.

32.     Unknown Defendant Independent Contractor forged the signature of Lori Schlarman and provided a business address where she is of counsel with a law firm in Covington, Kentucky as her residential address.

33.     The *Kenton County Neighborhood Directory* published in 2010 and covering the period September 2010 to September 2011, lists Lori Schlarman's name and address in the Residential Listing section of the book, at page 178.  Lori Schlarman is a resident of Boone County.

34.     The NKAPC Petition contains four thousand, two hundred ninety two (4,292) names of individuals who were not identified as registered voters.

35.     This subset of names includes forged signatures of nonresidents, such as Lori Schlarman and Doctor Thon, as well as Kenton County residents, such as Doctor Jackson.  These forgeries are believed to have occurred on August 4, 2011, which is the date provided on the document bearing each of their purported signatures.

36.     This subset of voters' names does not include instances where a registered voter signature was forged and a correct residential address was provided on the petition, yet this occurred in addition to the aforementioned instances where a business address was provided alongside a forged signature.

37.     On September 6, 2011, the County Clerk announced that the NKAPC Petition was not in proper order and that the NKAPC Petition would not be certified.

38.     Proponents of the NKAPC Petition filed suit against the County Clerk, seeking declaratory and injunctive relief, alleging *inter alia* that "[p] pursuant to OAG 92-132, the signature

of a voter on a local option petition may be rejected as invalid 'only if the clerk or the county judge/executive is unable to determine the petitioner's identity after consulting the information given on the petition,' and all signatures and entries are presumed to be valid."  See Second Amended Verified Complaint in the case styled _The Home Builders Assoc. of Northern Kentucky, Inc., et al.  v. Gabrielle Summe, et al._, Case No. 11-CI-2325, Kenton Circuit Court, Div. III, Exhibit D.

39.     None of the named parties in that case are named parties in the herein action.

40.     Plaintiff Garry L. Edmondson is the Kenton County Attorney and has served in this capacity since 1994.

41.     When issues of fraud surfaced during the NKAPC Petition process, Plaintiff decided that it would be best to hire outside counsel to address the civil issues affecting the validity of the certification process and to defend the Clerk so as to avoid issues of perceived conflict or bias due to Plaintiff's concurrent duties and responsibilities as a prosecutor.

42.     Had there not been issues of fraud affecting the validity of the NKAPC Petition and the possibility of criminal proceedings initiated against culpable persons and entities, Plaintiff would have defended against the allegations made in the civil suit without the need to hire outside counsel and without the need to incur defense costs.

43.     However, because there is affirmative evidence of fraud in connection with the NKAPC Petition, Plaintiff concluded, correctly, that outside counsel would represent the Clerk and county to avoid an appearance of bias and to avoid allegations of any conflict of interest.

44.     Because hiring outside counsel was necessary to address the issues of fraud in connection with the NKAPC Petition, Plaintiff has been damaged in a manner cognizable under the RICO civil remedies provision of 18 USC 1964 et seq.

45.     Damages proximately caused by Defendants' scheme to defraud the Clerk and voters consist of legal defense costs incurred, and continuing to be incurred, to defend the County Clerk's conclusion that the NKAPC Petition is not in proper order.

46.     Plaintiff Garry Edmondson in his individual capacity as county attorney is paying for the Clerk's legal defense from his county attorney discretionary general fund.

47.     Plaintiff uses the office's discretionary general funds to provide efficient, professional and effective legal and administrative services to the citizens of Kenton County.

48.     Consequently, any diminution of these funds constitutes a direct reduction in the resources available to provide the same quality of services and, therefore, constitutes a real and immediate injury to the Plaintiff.

49.     Any person injured in his business or property by reason of a violation of 18 USC § 1962 may sue therefore in any appropriate United States district court and shall recover threefold the damage he sustains and the cost of the suit, including a reasonable attorney's fee. 18 USC § 1964 (c).

50.     Plaintiff has standing to bring this RICO action pursuant to 18 USC § 1964 (c).

RICO COUNT I
AGAINST AZ PETITION PARTNERS, L.L.C.
(18 USC § 1028 (a) (2) (3) (7))

51.     Each of the preceding paragraphs is incorporated herein by reference as if fully restated in Count I against AZ Petition Partners, L.L.C.

52.     It is unlawful for any person associated with any enterprise, the activities of which affect interstate commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.  18 USC § 1962 (c).

53.     AZ Petition Partners, L.L.C. is a "person" as that term is defined in 18 USC § 1961 (3).

54.     "Racketeering activity" includes any act which is indictable under the provisions of 18 USC § 1028 relating to fraud in connection with identification documents, and section 1341, relating to mail fraud.

55.     A RICO "enterprise" includes any individual or legal entity, and any group of persons associated-in-fact, although not a legal entity. 18 USC § 1961 (4).

56.     A "pattern of racketeering activity" requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity. 18 USC § 1961 (5).

57.     AZ Petition Partners, L.L.C., is associated with an enterprise that produces and transfers identification documents and uses them without lawful authority as a means of identification of voters whose names appear on petitions.  An "identification document" under 18 USC § 1028 and in the context of this case is a document made under the authority of any state or commonwealth which, when completed with information concerning a particular individual, is of a type intended for the purpose of identification of individuals.  18 USC § 1028 (d) (3).

58.     Under Kentucky law, a person is guilty of forgery in the second degree, a felony, when, with intent to defraud or deceive another, he falsely makes, completes or alters a written instrument which is, when completed, a public record or an instrument filed or authorized by law to be filed in or with a public office or public employee. KRS § 516.030.

59.     A petition is a written instrument that is authorized by Kentucky law to be filed in or with a public office – the office of the Kenton County Clerk.  KRS 147.620.

60.     A petition is also an identification document under 18 USC § 1028 (d) (3) as it is a document made under the authority of the Commonwealth of Kentucky which, when completed with information concerning a particular individual, is of a type intended for the purpose of identification of individuals.

61.     The term "produce" under 18 USC § 1028 and in the context of this case means to either alter or assemble.  18 USC § 1028 (d) (9).

62.     The term "traffic" means to transport, transfer, or otherwise dispose of, to another, as consideration for anything of value; or to make or obtain control of with intent to so transport, transfer, or otherwise dispose of.  18 USC § 1028 (d) (10).

63.     The term "means of identification" under 18 USC 1028 (d) (7) (A) and in the context of this case means any name that may be used, alone or in conjunction with any other information, to identify a specific individual.

64.     Pursuant to OAG 92-132, the signature of a voter on a local option petition may be rejected as invalid, only if the clerk or the county judge/executive is unable to determine the petitioner's identity, after consulting the information given on the petition.  Therefore, once a petition is filed, the means of identification of voters is the name and signature contained in the petition.

65.     Forging a name on a petition constitutes felony forgery under Kentucky state law and also constitutes racketeering activity.  18 USC 1028 (a) (1).  Racketeering activity also includes any of the following acts: Knowingly transferring an identification document knowing that it was produced without lawful authority (18 USC 1028 (a) (2)); knowingly possessing with intent to use unlawfully or transfer unlawfully five (5) or more identification documents (other than those issued

lawfully for the use of the possessor) (18 USC 1028 (a) (3)); knowingly transferring, possessing, or using, without lawful authority, a means of identification of another person with the intent to commit, or to aid or abet, or in connection with, any unlawful activity that constitutes a violation of Federal law, or that constitutes a felony under any applicable State or local law (18 USC 1028 (a) (7)).

66.     AZ Petition Partners, L.L.C., is associated with an enterprise, the activities of which affect interstate commerce, and participates in the conduct of the enterprise's affairs through a pattern of racketeering activity in violation of 18 USC 1962 (c).

67.     Specifically, AZ Petition Partners, L.L.C. knowingly transfers identification documents knowing they are produced without lawful authority (18 USC 1028 (a) (2)); knowingly possesses with intent to use unlawfully or transfer unlawfully five or more identification documents (18 USC 1028 (a) (3)); knowingly transfers, without lawful authority, a means of identification of another person in connection with forgeries that constitute felonies under Kentucky law pursuant to KRS § 516.030. (18 USC 1028 (a) (7)).

68.     AZ Petition Partners, L.L.C., participates in the enterprise consisting of paying Unknown Defendant Independent Contractors to gather and traffic forged identification documents that are subject only to its professed measures of quality control.  The RICO enterprise is an association-in-fact among AZ Petition Partners, L.L.C., Andrew D. Chavez and the independent contractors hired and paid to gather signatures on petitions.

69.     The enterprise is furthered by recruiting solicitors of ill repute, some of who have been convicted within the last ten years of one or more felonies in connection with producing signatures for petitions.  AZ Petition Partners, L.L.C. claims to have quality control measures

including background checks on its independent contractors, yet a pattern exists of using solicitors with criminal histories involving fraud and dishonesty to produce signatures.

70.     AZ Petition Partners, L.L.C. receives a fee, per signature, regardless of the signature's validity.

71.     AZ Petition Partners, L.L.C. received approximately ninety nine thousand dollars ($99,000.00) to gather signatures for the NKAPC Petition.

72.     AZ Petition Partners, L.L.C. pays independent contractors who have no regard for due process in their opportunistic pursuit to gather as many signatures as possible.

73.     After forging individuals' signatures, the independent contractors traffic the identification documents, through U.S. Postal or private carrier services, to AZ Petition Partners, L.L.C.

74.     Thereafter, AZ Petition Partners, L.L.C. assembles and mails, through either U.S. Postal or private carrier services, the identification documents to a field office in the originating jurisdiction where proponents of the petition are duped into believing their cause has support. These mailings further the enterprise because clients are obligated to pay AZ Petition Partners, L.L.C. for the total number of signatures produced.  A.Z. Petition Partners, L.L.C. was paid five-dollars ($5) per signature for producing signatures for the NKAPC Petition.

75.     The following are relevant excerpts from Petition Partners website under the heading "Quality Control."

1.  Each and every petitioner is run through a nationwide criminal background
    check….
….

3.  Each name and address is checked against the most current voter database….
    [O]ur clients will receive a copy of every petition page with indications on which

signature is checked, whether or not the signature is valid and the specific reason why.

4. Complete reporting is provided to the client.  Reports will include a daily database via email.   Twice weekly we also provide you with the actual copies of the petitions.  Again, these copies will have indication on which signatures were checked and very precise reasons in which they did or did not match up against the voter rolls.

….

http://www.petitionpartners.com/Quality_Control

76.     Whether background checks are undertaken some or none of the time is uncertain. However, the enterprise is furthered by the affirmative representation that background checks are part of the company's quality control measures.   Using independent contractor solicitors who are willing to forge voter signatures also furthers the enterprise.  A willingness to forge signatures is easily inferred from a background check that confirms that a solicitor has a prior criminal history involving fraud and dishonesty.  The practice of recruiting solicitors with a propensity for criminal behavior is likely to continue, indefinitely, in states like Kentucky where there are no referendum petition regulations.   Moreover, the enterprise structure promotes being paid per signature, regardless of the signature's validity.

77.     Despite claiming in its on-line disclosures to identify which petition signatures are invalid, AZ Petition Partners, L.L.C. does not strike through names or otherwise designate in any manner which signatures are invalid on the documents that are intended to be filed into the public record.

78.     The enterprise of gathering and mailing forged signatures on petitions affects interstate commerce as AZ Petition Partners; L.L.C. currently operates in eleven (11) different states and uses four thousand (4,000) independent contractor solicitors from many different states.

The fraud that manifest in the NKAPC Petition process presents a serious risk of open-ended continuity in states, like Kentucky, where neither AZ Petition Partners, L.L.C. nor independent contractor solicitors are required to verify, to any degree, that the signatures they obtain are valid. Moreover, the fraud that manifest in the NKAPC Petition process presents a serious risk of open-ended continuity in states, like Kentucky, where independent contractor solicitors are not required to designate their own identity on the identification documents they submit for filing.  Additionally, the fraud that manifest in the NKAPC Petition process presents a serious risk of open-ended continuity in states, like Kentucky, where independent contractor solicitors are not required to register with the Secretary of State or other state agency for regulatory purposes.  Another reason that the fraud in the NKAPC Petition process presents a serious risk of open-ended continuity in Kentucky and elsewhere is that independent contractor solicitors are not required to be residents of the state where they are soliciting signatures.  This allows solicitors to operate virtually in the dark with respect to their identity and whereabouts and impedes affected states' subpoena power to investigate instances of fraud.

79.     AZ Petition Partners, L.L.C. participation in the enterprise of gathering and trafficking forged identification documents is conducted through a pattern of racketeering activity proscribed in 18 USC § 1028 (a) (2) (3) (7), and mail fraud as set forth in Count II.


RICO COUNT I
AGAINST UNKNOWN DEFENDANTS
18 USC § 1028

80.     Each of the preceding paragraphs is incorporated herein by reference as if fully restated in Count I against the Unknown Defendants.

81.     It is unlawful for any person associated with any enterprise, the activities of which affect interstate commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.  18 USC 1962 (c).

82.     Each Unknown Defendant is a "person" as that term is defined in 18 USC 1961 (3).

83.     Racketeering activity includes any act which is indictable under the provisions of 18 USC § 1028 relating to fraud in connection with identification documents, and section 1341, relating to mail fraud.

84.     A RICO enterprise includes any individual, corporation, or other legal entity, and any union or group of individuals associated in fact although not a legal entity. 18 USC § 1961 (4).

85.     Forging a name on a petition constitutes felony forgery under Kentucky law and also constitutes racketeering activity under 18 USC § 1028 (a) (1).  Racketeering activity also includes any of the following acts: Knowingly transferring an identification document knowing that it was produced without lawful authority (18 USC § 1028 (a) (2)); knowingly possessing with intent to use unlawfully or transfer unlawfully five (5) or more identification documents (other than those issued lawfully for the use of the possessor) (18 USC § 1028 (a) (3)); knowingly transferring, possessing, or using, without lawful authority, a means of identification of another person with the intent to commit, or to aid or abet, or in connection with, any unlawful activity that constitutes a violation of Federal law, or that constitutes a felony under any applicable State or local law (18 USC § 1028 (a) (7)).

86.     Unknown Defendants participated in the RICO enterprise by engaging in ore more of the following acts: forging one or more signatures in violation of 18 USC § 1028 (a) (1); knowingly transferring one or more identification documents with knowledge that it was produced without

lawful authority in violation of 18 USC § 1028 (a) (2); knowingly possessing with intent to transfer unlawfully five (5) or more identification documents (other than those issued lawfully for the use of the possessor) in violation of 18 USC § 1028 (a) (3); and knowingly transferring without lawful authority, a means of identification of another person in connection with an unlawful activity that constitutes a felony under Kentucky law (18 USC § 1028 (a) (7)).

87.      Each Unknown Defendant received compensation from AZ Petition Partners, L.L.C., on a per signature basis, regardless of the validity of the signature.

88.      Independent contractors associated with the enterprise are paid to produce signatures without regard for validity or due process and to traffic the identification documents from the originating jurisdiction to AZ Petition Partners, L.L.C., or its designated agent(s), where the documents are assembled and returned to the client in the originating jurisdiction.

89.      The enterprise of trafficking and using forged identification documents for felony purposes affects interstate commerce as AZ Petition Partners, L.L.C. operates in eleven (11) different states where it uses four-thousand (4,000) independent contractor solicitors from many different states who receive consideration on a per signature basis, regardless of the validity of the signature.

90.      Unknown Defendants' participation in the enterprise includes racketeering activity proscribed in 18 USC § 1028 (a) (1) (2) (3) and (7), and mail fraud as set forth in Count II.

RICO COUNT II
AGAINST AZ PETITION PARTNERS, L.L.C.
18 USC § 1341

91.      Each of the preceding paragraphs is incorporated herein by reference as if fully restated in Count II against AZ Petition Partners, L.L.C.

92.     AZ Petition Partners, L.L.C. uses the United States Postal Service and/or private or commercial interstate carriers to receive, and ship, forged identification documents in violation of 18 USC § 1341, which provides in relevant part: "[w]hoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations,… , for the purpose of executing such scheme …, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing…, shall be fined under this title or imprisoned not more than 20 years, or both."  18 USC § 1341.

93.     The specific dates on which mail fraud occurred are unknown to Plaintiff as this information is in the possession of Defendant AZ Petition Partners, L.L.C.  However, upon information and belief, based on what is on Petition Partner's website, identification documents are sent from solicitors to AZ Petition Partners, L.L.C. on a daily basis and documents are mailed to clients in the originating jurisdiction twice weekly.  As such, forged documents are received, and shipped, at a minimum of twice weekly, and this would have occurred from in or around July 2011 until the petition was filed on August 8, 2011.

RICO COUNT II
AGAINST UNKNOWN DEFENDANTS
18 USC § 1341

94.     Each of the preceding paragraphs is incorporated herein by reference as if fully restated in Count II against Unknown Defendants.

95.     Unknown Defendants participated in the RICO enterprise by engaging in ore more of the following acts: forging one or more signatures in violation of 18 USC 1028 (a) (1); knowingly transferring one or more identification documents with knowledge that it was produced without lawful authority in violation of 18 USC 1028 (a) (2);  knowingly possessing with intent to transfer unlawfully five or more identification documents (other than those issued lawfully for the use of the possessor) in violation of 18 USC 1028 (a) (3); and knowingly transferring without lawful authority, a means of identification of another person with in connection with an unlawful activity that constitutes a felony under Kentucky law (18 USC 1028 (a) (7)).

96.     In furtherance of this scheme, Unknown Defendants used the United States Postal Service and/or private or commercial interstate carriers to traffic forged Identification Documents in violation of 18 USC § 1341.

97.     The specific dates on which mail fraud occurred are unknown to Plaintiff as this information is in the possession of Defendants.  However, upon information and belief, based on what is on Petition Partner's website, identification documents are sent from solicitors to AZ Petition Partners, L.L.C. on a daily basis and documents are mailed to clients in the originating jurisdiction twice weekly.  As such, forged documents are received, and shipped, at a minimum of twice weekly, and this would have occurred from in or around July 2011 until the petition was filed on August 8, 2011.

RICO COUNT III
CONSPIRACY AGAINST ANDREW D. CHAVEZ
18 USC § 1962 (c) (d)

98.     Each of the preceding paragraphs is incorporated herein by reference as if fully restated in Count III against Andrew D. Chavez, who is a "person" as that term is defined in 18 USC 1961 (3).

99.     A conspirator need not have agreed to commit every crime within the scope of the conspiracy, so long as it is reasonable to infer that each crime was intended to further the enterprise's efforts.

100.    It is not necessary for each conspirator to participate in every phase of the enterprise's ventures, provided there is assent to contribute to a common enterprise.

101.    What are seemingly independent transactions may be revealed as parts of a single conspiracy by their place in a pattern of regularized activity involving continuity of membership.

102.    Andrew D. Chavez is engaged in a conspiracy with Unknown Defendant Independent Contractors to associate in an enterprise that produces identification documents without lawful authority and using the documents as a means of identification of voters in violation of 18 USC § 1962 (c).

103.    Andrew D. Chavez coordinates and uses independent contractors who are willing to commit felony forgery and to traffic documents to Arizona in furtherance of the common enterprise.  Independent contractors associated with the enterprise are told they will be paid to produce signatures on identification documents based solely on the number of signatures produced.  Andrew D. Chavez directs that the documents be shipped back to Arizona where AZ Petition Partners, L.L.C. assembles and mails or otherwise delivers the identification Documents

back to the originating jurisdiction for filing, without identifying signatures known to be invalid on the original document intended to be filed into the public record.

104.    The enterprise of gathering and mailing forged signatures on petitions affects interstate commerce as AZ Petition Partners, L.L.C., of which Andrew D. Chavez is the sole managing member, currently operates in eleven (11) different states and uses four thousand (4,000) independent contractor solicitors from many different states.  The fraud that manifest in the NKAPC Petition process presents a serious risk of open-ended continuity in states, like Kentucky, where neither AZ Petition Partners, L.L.C., nor independent contractor solicitors are required to verify, to any degree, that the signatures they obtain are valid.   Moreover, the fraud that manifest in the NKAPC Petition process presents a serious risk of open-ended continuity in states, like Kentucky, where independent contractor solicitors are not required to designate their own identity on the identification documents they submit for filing.  Additionally, the fraud that manifest in the NKAPC Petition process presents a serious risk of open-ended continuity in states, like Kentucky, where independent contractor solicitors are not required to register with the Secretary of State or other state agency for regulatory purposes.  Another reason that the fraud in the NKAPC Petition process presents a serious risk of open-ended continuity in Kentucky and elsewhere is that independent contractor solicitors are not required to be residents of the state where they are soliciting signatures.  This allows solicitors to operate virtually in the dark with respect to their identity and whereabouts and impedes affected states' subpoena power to investigate instances of fraud.  Andrew D. Chavez exploits these circumstances in furtherance of the enterprise.

WHEREFORE, Plaintiff seeks treble damages against each of the Defendants, jointly and severally, attorney's fees for prosecuting this RICO action and all other relief to which Plaintiff may be entitled under civil RICO remedies, including a trial by jury.

Respectfully submitted:

/s/ *Christopher S. Nordloh*

Christopher S. Nordloh (KY 85716)
NORDLOH LAW OFFICE, PLLC
Attorney for Plaintiff
28 West 5th Street
Covington, Kentucky 41011
*P* 859-491-9991
*F* 859-491-0187
*E* chrisnordloh@nordlohlaw.com